IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH E. DERITIS,** | **:** | |
| **Plaintiff** | **:** | |
| | **:** | **CIVIL ACTION** |
| **v.** | **:** | **13-6212** |
| | **:** | |
| **THOMAS J. MC GARRIGLE, et al.,** | **:** | |
| **Defendants** | **:** | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                         **JUNE 24, 2014**

Before the Court are Defendants' motions to dismiss the complaint and Plaintiff's responses thereto. For the reasons below, the motions will be granted in part and denied in part.

### I.      Facts[1]

Joseph DeRitis, the Plaintiff, was an assistant public defender at the Office of the Public Defender in Delaware County. The Defendants are Douglas Roger, formerly the First Assistant Public Defender and now the Executive Director of the Office of the Public Defender; Judge Chad Kenney, the President Judge of the Court of Common Pleas of Delaware County; Michael Maddren, the solicitor of Delaware County; Thomas McGarrigle, the chairman of the Delaware County Council; Mario Civera, Jr., Colleen Morrone, John McBlain, and David White, members of the Delaware County Council; and Delaware County itself. All employees of the Delaware County Office of the Public Defender are Commonwealth employees.

Public Defenders in Delaware County are responsible for different phases of litigation. A typical career track for a public defender is to begin by representing criminal defendants at preliminary hearings, then to be promoted to the juvenile unit, and then to be promoted to a "trial

---

[1] The facts are drawn from the Plaintiff's complaint and are accepted as true for the purposes of this Memorandum Opinion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

team" assigned to a specific judge.  For the first two years of his career as a public defender,

DeRitis followed the standard career track, and he was eventually assigned to Judge Gregory

Mallon's trial team.

On June 14, 2012, Judge Kenney became President Judge of the Court of Common Pleas.

Six days later, another public defender on Judge Mallon's trial team suffered a debilitating

motorcycle accident. Roger used this accident as a pretext to reassign DeRitis to the juvenile

unit, effectively a demotion. Because DeRitis could not understand why it would help manage

the caseload of a trial team that had lost one member (due to the accident) to dismiss another

member, he was suspicious that Roger had an ulterior motive. DeRitis discussed the situation

with friends and colleagues and learned that as soon as he became President Judge, Judge

Kenney took steps to accelerate the processing of criminal cases. Of particular concern to Judge

Kenney was that DeRitis himself did not pressure his clients to forgo their trial rights,

contributing to a large caseload. Judge Kenney communicated this concern to Roger.

When DeRitis learned of Judge Kenney's preoccupation with judicial statistics at the

expense of criminal defendants' constitutional rights, he complained to friends and colleagues.

He also requested a transfer back to the preliminary hearing unit, another demotion, which was

granted. He later approached Defendants Maddren and McGarrigle, in their capacities as county

solicitor and chairman of the County Council, respectively, and informed them of the situation.

They failed to follow up with DeRitis.

In February, 2013, DeRitis represented a criminal defendant at a preliminary hearing.

After an adverse determination at the hearing, DeRitis filed a petition for a writ of habeas

corpus[2] on the criminal defendant's behalf; this filing prompted an office-wide email from the chief of the preliminary hearing unit (not a defendant here) instructing members of the unit that they were not authorized to file such petitions. Two days after the email, on which Roger was copied, Roger called DeRitis into his office, expressed his anger with DeRitis for having discussed his suspicions about Judge Kenney to many people, and fired DeRitis.

## II.      Standard of Review

In order to survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[3] Additionally, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[4] A plaintiff who survives a motion to dismiss for failure to state a claim on which relief may be granted states facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[5] Plaintiffs are entitled to have all facts stated in the complaint accepted as true and all reasonable inferences drawn in their favor. Furthermore, courts generally construe filings by *pro se* litigants liberally, but although DeRitis is unrepresented, he is a licensed attorney, and therefore the Court need not grant him more latitude than it would a represented party.[6]

## III.     Discussion

---

[2] In this context, a habeas petition is an appeal to the Court of Common Pleas for *de novo* review and a new preliminary hearing.

[3] Fed. R. Civ. P. 8(a)(2).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[6] *Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005); *Hammond v. Creative Fin. Planning Org., Inc.*, No. 91-cv-2257, 1992 WL 176404, *4 (E.D. Pa. July 15, 1992).

### A. Federal Claims

DeRitis has sued Defendants pursuant to 42 U.S.C. § 1983, the statute that creates liability for state actors' violation of constitutional rights. Specifically, he asserts that Defendants violated "his rights to free speech and advocacy, his rights to due process of law, and his right to engage in zealous advocacy on behalf of criminal defendants, all in violation of the First, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States."[7] He has also sued for conspiracy to interfere with civil rights under 42 U.S.C. § 1985 and failure to prevent a § 1985 violation under §1986.

#### 1. Fifth, Sixth, and Fourteenth Amendment Claims

The Court can easily dispose of the Fifth and Sixth Amendment claims: these amendments do not grant any rights to DeRitis, and he does not have standing to litigate unspecified criminal defendants' rights to zealous representation via § 1983.[8] With respect to the Fourteenth Amendment claim, the most plausible theory is that DeRitis was deprived of his property interest without due process of law. However, he was an at-will employee,[9] and at-will

---

[7] Compl. at ¶ 96.

[8] *Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004). To the extent the Complaint could be read to argue that the Public Defender's policy prohibiting attorneys in the preliminary hearing unit from filing habeas petitions violated the constitutional rights of the petitioner whom DeRitis represented on habeas, the Court notes that DeRitis's standing to raise this claim would still be in question, *Conn v. Gabbert*, 526 U.S. 286, 292–93 (1999), and in any event the only alleged adverse action taken against DeRitis arising out of this habeas petition was an angry email from a non-defendant (on which Defendant Roger was "memoed," which presumably means copied. Compl. at ¶ 88).

[9] Compl. at ¶ 17.

employees in Pennsylvania do not have a property interest in their jobs.[10] Therefore, DeRitis cannot proceed on a Fourteenth Amendment theory.[11]

2.   Section 1985 and 1986 Claims

DeRitis attempts to state a claim under two theories of § 1985: first, that Defendants conspired to obstruct justice pursuant to § 1985(2) when they prevented him from filing a habeas petition as part of representing a criminal defendant in pretrial proceedings, and second, that in contravention of 1985(3) Defendants conspired to violate DeRitis's Fourteenth Amendment rights. Even if DeRitis were correct that interference with his representation of a client that did not rise to the level of witness intimidation could serve as a basis for a § 1985 violation, the Complaint here fails to allege that such a violation occurred. DeRitis alleges that he filed a habeas petition and that his superiors informed his unit that pursuant to department policy, members of the preliminary hearing unit were not authorized to file habeas petitions. There is no allegation that the habeas petitioner was prejudiced or that the object of Defendants' actions was to deter the petitioner from attending court, and DeRitis has no basis for asserting such a theory on his own behalf.

Also, contrary to DeRitis's arguments, violation of the First Amendment is not a basis for a valid § 1985(3) claim, which must allege class-based discrimination.[12] Finally, for the same

_____

[10] *Elmore v. Cleary*, 399 F.3d 279, 282–83 (3d Cir. 2005).

[11] Defendant argues that his claim for discharge in deprivation of his First Amendment rights also states a violation of the Fourteenth Amendment. This is true, but only because it is the Fourteenth Amendment that incorporates the First Amendment against the states. *Elrod v. Burns*, 427 U.S. 347, 356 n.10 (1976). As shorthand, therefore, the Court discusses later in this opinion DeRitis's "First Amendment" rights rather than his "First and Fourteenth Amendment" rights.

[12] *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006).

reason that none of the facts adduced in the complaint states a § 1985 claim, there is no indication that any Defendant was at any point a "person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do."[13] Therefore, the §§ 1985 and 1986 claims must be dismissed.

3. First Amendment

a.   Individual Defendants

In order to state a claim for retaliation for exercising First Amendment rights under § 1983, "a public employee must demonstrate that (1) he or she engaged in activity that is protected by the First Amendment, and (2) the protected activity was a substantial factor in retaliatory action by the employer."[14] The first inquiry is a question of law, the second of fact.[15] To establish that the activity was protected by the First Amendment, the plaintiff must show that he or she spoke as a citizen and on a matter of public concern. After making this showing, the plaintiff must persuade the court that the employee's interests "as a citizen, in commenting upon matters of public concern" outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[16]

---

[13] 42 U.S.C. § 1986.

[14] *Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012).

[15] *Id.*

[16] *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

In order to recover, DeRitis must have spoken "as a citizen addressing matters of public concern."[17] He did not speak as a citizen if he spoke "pursuant to [his] official duties."[18] Whether speech is made pursuant to one's official "duties is a mixed question of fact and law."[19] The Third Circuit has "consistently held that complaints up the chain of command about issues related to an employee's workplace duties—for example, possible safety issues or misconduct by other employees—are within an employee's official duties."[20] By contrast, a "First Amendment retaliation claim insofar as it is premised on [a plaintiff's] advocating and supporting ideas, principles and projects," will not be dismissed.[21]

 In evaluating whether DeRitis has stated a claim under § 1983, "[t]he court . . . cannot make a superficial characterization of the speech or activity taken as a whole . . . . Instead, it must conduct a particularized examination of each activity for which the protection of the First Amendment is claimed."[22]

The Court does not hesitate to conclude that the management of the Public Defender's Office and a judge's alleged statistics-driven approach to case management are matters of grave public concern.[23] Nevertheless, some allegations of DeRitis's comments are too vaguely pleaded to be the basis for subjecting any Defendant to liability. For example, his allegations that he

---

[17] *Garcetti v. Ceballos*, 547 U.S. 410, 416 (2006).

[18] *Id.* at 421.

[19] *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007).

[20] *Morris*, 487 F. App'x at 39.

[21] *Hill v. Borough of Kutztown*, 455 F.3d 225, 242 (3d Cir. 2006).

[22] *Johnson v. Lincoln Univ. of Com. Sys. of Higher Educ.*, 776 F.2d 443, 451 (3d Cir. 1985).

[23] *Zamboni v. Stamler*, 847 F.2d 73, 77 (3d Cir. 1988) ("[P]ublic employees' criticism of the internal operations of their places of public employment is a matter of public concern.").

complained to "friends and colleagues"[24] and to "various magisterial district judges and private attorneys"[25] do not contain enough factual detail to put Defendants on notice of what claims they must defend. Other allegations are clearly workplace grievances that are not protected by the First Amendment.[26] However, a fair reading of the Complaint as a whole is that DeRitis "sought to bring to light actual or potential wrongdoing or breach of the public trust on the part of . . . officials"[27] when he brought his concerns to County Council members,[28] and therefore he spoke as a citizen at those times.

Having determined that, in the abstract, DeRitis has stated a cognizable legal theory, the Court now turns to the more particular question of whether the facts alleged in the Complaint state a claim against any of the Defendants.

i.      Defendants Against Whom There are no Allegations

The Complaint contains no factual allegations whatsoever against Defendants Civera, McBlain, Morrone, and White, and therefore the Complaint must be dismissed as to them. DeRitis attempts to argue in his opposition to the motion to dismiss that "[a]s a government unit, all Movants are deemed . . . to have been informed of Defendants Rogers's and Kenney's actions prior to Plaintiff's termination through Plaintiff's conversations with Movants Maddren and

---

[24] Compl. at ¶¶ 38 & 46.

[25] *Id.* at ¶ 50.

[26] *Id.* at ¶ 47 ("Plaintiff often clashed with one (1) of the hearing masters in the juvenile court, and worried for his employment."); ¶ 48("Plaintiff contacted Defendant Roger on his cellular telephone, and asked if he could be assigned to Judge Capuzzi's team."); ¶ 73 ("Plaintiff was drafting an application for a writ of *habeas corpus*.").

[27] *Czurlanis v. Albanese*, 721 F.2d 98, 104 (3d Cir. 1983) (internal quotation marks omitted).

[28] Compl. at ¶¶ 60 & 68–69.

McGarrigle."[29] However, imputing knowledge and liability to all members of a municipal council is contrary to the established law of § 1983 claims that only those personally involved in the deprivation of constitutional rights can be held liable.[30]

     ii.  Claims Against Defendants Maddren and McGarrigle

After DeRitis allegedly learned that Judge Kenney was concerned about the judge's "numbers" at the expense of criminal defendants' rights, DeRitis informed Defendants Maddren and McGarrigle.[31] Beyond conclusory statements, DeRitis nowhere alleges that either Defendant took any unconstitutional action with respect to his allegations.[32] A fair inference from the Complaint is that Maddren, the county solicitor, began an investigation into DeRitis's allegations: at his meeting with Maddren, DeRitis expressed his concern that Defendant Roger would be upset with DeRitis for instigating the investigation, and later Roger showed himself to be "angry that Plaintiff would discuss the matter regarding his demotion and his suspicion concerning Defendant Kenney with Defendant Maddren."[33] Nevertheless, there is no reason to infer that Maddren had any ill intent toward DeRitis or that Maddren conspired with Roger to have DeRitis terminated. DeRitis never alleges that Maddren took any action adverse towards DeRitis, only that Maddren never followed up with DeRitis after the investigation started. That

---

[29] Pl.'s Opp. at p.23.

[30] *Kocher v. Larksville Borough*, 548 F. App'x 813, 820 (3d Cir. 2013) ("Without evidence that Mayor Zawadski or Councilman Pekarovsky personally published the reasons for Kocher's termination, summary judgment was proper as to both."); *Capano v. Borough of Stone Harbor*, 530 F. Supp. 1254, 1267 (D.N.J. 1982); *cf. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor.").

[31] *Id.* at ¶¶ 60 & 68–69.

[32] *Id.* at ¶ 64.

[33] *Id.* at ¶ 89.

allegation is insufficient to state a claim under § 1983 or any other theory of liability, and therefore the Complaint must be dismissed as against Maddren.

Similarly, DeRitis alleges that he reported his concerns about Judge Kenny to Defendant McGarrigle.[34] McGarrigle stated that he would investigate DeRitis's allegations, but following that statement, the Complaint is silent on McGarrigle's role in any adverse employment actions taken against DeRitis. In the absence of meaningful factual support to the claim that McGarrgle caused a deprivation of DeRitis's rights, the Complaint must be dismissed against him as well.

### iii.     Claims Against Defendant Kenney

DeRitis alleges that Judge Kenney was upset that DeRitis "was asking for too many trial dates"[35] for his clients and therefore there were too many cases staying on the docket of the Court of Common Pleas for too long. Judge Kenney complained to Roger, who then transferred DeRitis to the juvenile unit and eventually fired him. Notably absent from the Complaint with respect to Judge Kenney is any allegation that Judge Kenney sought to prevent DeRitis from exercising DeRitis's constitutional rights. DeRitis does not allege that Judge Kenney sought to have DeRitis punished for DeRitis's complaints about Judge Kenney, rather the allegations are that Judge Kenney sought to impact the statistics related to his case management by removing DeRitis from the trial unit that he was assigned to. Serious as these allegations are, they do not state a claim that DeRitis may raise via § 1983 and therefore must be dismissed.

### iv.     Claims Against Defendant Roger

---

[34] *Id.* at ¶ 69.

[35] *Id.* at ¶ 44.

10

According to the Complaint, Judge Kenney was upset that "Joe [DeRitis] doesn't move his cases."[36]  As a result, Judge Kenney informed Roger that "my numbers [we]re too high."[37] As discussed above, DeRitis complained as a citizen about Judge Kenney's worries on several instances. Because of DeRitis's habit of "discuss[ing] the matter regarding his demotion and his suspicion concerning Defendant Kenney,"[38] Roger transferred and eventually terminated DeRitis from his employment as a public defender.

This is enough to state a claim of violation of DeRitis's First Amendment right to comment as a citizen on matters of public concern without fearing for adverse employment consequences. As stated above, the elements of a § 1983 claim predicated on a First Amendment violation are simply protected speech and an adverse employment action. DeRitis has satisfied both elements, and therefore his Complaint will not be dismissed as against Roger.

Roger raises a qualified immunity defense. "The appropriate standard for qualified immunity . . .  is whether reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful."[39] However, the right of a public employee to seek to bring to light official wrongdoing is clearly established.[40] On the record before the Court at this stage of the litigation, the Court cannot conclude that Roger is entitled to a qualified immunity defense.

---

[36] *Id.* at ¶ 42.

[37] *Id.*; *see also id.* at ¶¶ 39, 45.

[38] *Id.* at ¶ 89.

[39] *Pro v. Donatucci*, 81 F.3d 1283, 1291 (3d Cir. 1996) (internal quotation marks omitted).

[40] *E.g.*, *Pickering,* 391 U.S. at 571; *Zamboni,*, 847 F.2d at 77.

Finally, once it has been established that a plaintiff has spoken as a citizen on a matter of public concern, the Court must "strike a 'balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"[41] Although the outcome of a court's *Pickering* balance is a question of law, it is one that in this case requires a more fully developed record to determine whether DeRitis's "speech caused such interference with the effective functioning of the public employer's enterprise as to justify the action taken in response."[42] Taking as true the allegations of the Complaint, the Court cannot determine as a matter of law that DeRitis's speech was unprotected.

### b.  Liability Under *Monell*

In order to impose liability on a municipality, a plaintiff "must prove that action pursuant to official municipal policy caused" his injury.[43] "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[44] Additionally, the actions of an individual may implement official policy in a few circumstances, including when "the individual himself has final policy-making authority such that his conduct represents official policy, or . . . a final policy-maker renders the individual's conduct official for liability purposes

---

[41] *Zamboni*, 847 F.2d at 77 (alteration in original) (quoting *Pickering*, 391 U.S. at 568).

[42] *Id*. at 78 (internal quotation marks omitted).

[43] *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (internal quotation marks omitted).

[44] *Id.*

12

by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred."[45]

DeRitis alleges that he took his claims to members of the Delaware County Council who, despite promises to investigate his allegations that Judge Kenney and the Public Defender's Office were dissatisfied with DeRitis's techniques in representing his clients, never investigated DeRitis's claims. DeRitis points to no official municipal policy, nor any specific actions by individuals or widespread practices that could be said to have the force of law. DeRitis does not allege that the Council acted as a body on his request to investigate his plight, nor does he demonstrate that the Council delegated to Defendants Mcgarrigle and Maddren the authority to act or speak on behalf of the Council or that the Council ratified those Defendants' actions after the fact. Delaware County must be dismissed.

### B.  State Law Claims

DeRitis has alleged "civil conspiracy, negligent infliction of emotional distress, and wrongful discharge as well as denial of protections guaranteed by the Constitution of the Commonwealth of Pennsylvania and the Pennsylvania Whistleblower Law."[46] The state constitutional claims must be dismissed for lack of specificity: DeRitis did not enumerate what violations of the Pennsylvania Constitution occurred, and therefore Defendants are not on notice of the claims against them.

As for the tort claims, the Court must first address Defendants' immunity arguments. All Defendants here are employees of the Commonwealth or a local agency. Sovereign or

---

[45] *Hill,* 455 F.3d at245.

[46] Compl. at ¶ 2.

governmental immunity bars all the state law claims DeRitis has asserted against Delaware County[47] and against the individuals for any action taken within the scope of their employment.[48] DeRitis may be able to recover against an individual Defendant if "the individual's conduct falls outside the scope of the employee's employment."[49]

"Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated at least in part, by a purpose to serve the employer"[50] Ordinarily, whether an act was within the scope of employment is a question of fact, unless the facts are undisputed.[51] Thus, if the facts as alleged in the complaint are taken as true and any reasonable inferences are drawn in DeRitis's favor and still the Defendants could not be understood to have acted outside the scope of their employment, the Complaint will be dismissed.

The state law claims against Defendants Civera, McBlain, Morrone, and White must be dismissed because no facts are alleged against them at all, let alone facts that give rise to the inference that they acted outside the scope of their employment. Similarly, the only allegations against Maddren and McGarrigle are that DeRitis approached them in their capacities as

---

[47] *See, e.g.*, *Reinhold v. Cnty. of York, Pa.*, No. 11-cv-605, 2012 WL 4104793, *9 (M.D. Pa. Aug. 31, 2012).

[48] 42 Pa. Cons. Stat. Ann. §§ 8522, 8542.

[49] *Feliz v. Kintock Grp.*, 297 F. App'x 131, 137 (3d Cir. 2008). Contrary to Judge Kenney's views, sovereign immunity does not protect him from all suits in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103 (1984) ("[W]e now turn to the question whether the claim that petitioners violated state law *in carrying out their official duties* at Pennhurst is one against the State and therefore barred by the Eleventh Amendment." (emphasis removed and added)).

[50] *Schell v. Guth*, 88 A.3d 1053, 1067 (Pa. Commw. Ct. 2014).

[51] *Orr v. William J. Burns Int'l Detective Agency*, 12 A.2d 25, 27 (Pa. 1940).

14

councilmembers to investigate wrongdoing. They are alleged to have done nothing wrong, and therefore they must be dismissed both because they are immune from suit and because DeRitis fails to state a claim against them on any legal theory.

With respect to Judge Kenney, he is alleged to have communicated concerns about DeRitis's habit of bringing cases to trial. Judge Kenney disliked DeRitis's practice of doing so because it meant cases were on Judge Kenney's docket longer than he would have liked. Nothing in the Complaint suggests that micromanaging the Public Defender's Office in order to improve judicial statistics was within Judge Kenney's official duties, so sovereign immunity does not bar the suit against him at this stage. Under the facts as pleaded in the Complaint, the Court cannot determine as a matter of law that all the actions Judge Kenney is alleged to have taken were within the scope of his employment.

Similarly, Defendant Roger is alleged to have fired DeRitis because of Judge Kenney's concerns and because of DeRitis's complaints to his associates and to the Delaware County Council. Although it is possible that Roger was motivated "at least in part, by a purpose to serve the employer,"[52] it is also possible that he was motivated only by a desire to appease a judge. On the record before the Court it is impossible to conclude as a matter of law that Roger acted within the scope of his employment. Having determined that immunity is not a categorical bar to the suit against Kenney and Roger, the court now turns to the state law claims against them.

1.  Negligent Infliction of Emotional Distress

As Defendants correctly argue, Pennsylvania has recognized the tort of negligent infliction of emotion distress in four limited scenarios, and Plaintiff must allege either "(1) that

---

[52] *Schell,* 88 A.3d at 1067.

the Defendant had a contractual or fiduciary duty toward him; (2) that Plaintiff suffered a physical impact; (3) that Plaintiff was in a 'zone of danger' and at risk of an immediate physical injury; or (4) that Plaintiff had a contemporaneous perception of tortious injury to a close relative."[53] DeRitis's factual allegations are nothing like the cases where negligent infliction of emotional distress has been recognized, and therefore this count must be dismissed.

### 2. Pennsylvania Whistleblower Law

The Pennsylvania Whistleblower law provides that "No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste."[54] "Employer" is defined as "A person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body," while an "employee" is "[a] person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body."[55]

Since similar words in a statute should be interpreted similarly, the Court concludes that an "employer" is not any agent of any public body, but rather an agent of the public body that employs the relevant employee. Judge Kenney is thus not an "employer" within the meaning of the statute, and the whistleblower claim must be dismissed as to him.

---

[53] *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. Ct. 2000).

[54] 43 Pa. Stat. Ann. § 1423(a).

[55] 43 Pa. Stat. Ann. § 1422.

However, the Complaint does state a claim against Roger, DeRitis's supervisor. He is alleged to have discharged DeRitis for reporting to Maddren and McGarrigle an instance of wrongdoing, namely Judge Kenney's efforts to move cases quickly at the expense of criminal defendants' trial rights. Therefore, the whistleblower claim stands against Defendant Roger.

3. <u>Wrongful Discharge</u>

For an at-will employee, "an action for wrongful discharge exists only when a clear mandate of public policy is violated and where the complaint fails to disclose a plausible and legitimate reason for terminating the at-will relationship."[56] Here, the clear mandate of public policy is supplied by Pennsylvania's commitment to providing counsel to criminal defendants, to say nothing of the requirements of the Pennsylvania and federal constitutions.[57] However, a limitation on the public policy exception to the at-will rule is that "[a] cause of action for wrongful discharge . . . may be maintained only in the absence of a statutory remedy for an aggrieved employee. . . . On the facts alleged, plaintiff has an appropriate statutory remedy under the Whistleblower Act. The legislature clearly appears to have enacted that law precisely to protect the interest of employees and society in circumstances such as those alleged by plaintiff."[58]

The wrongful discharge claim, insofar as it is based on Roger's retaliation for DeRitis's allegations to McGarrigle and Maddren, must be dismissed. However, a fair reading of the

---

[56] *Grundon v. Def. Activities Fed. Credit Union, C.P.*, No. 1470-cv-1982, 1983 WL 42683, *1 (Pa. Com. Pl. Sept. 8, 1983).

[57] 16 Pa. Stat. Ann. § 9960.6; Pa. Const. Art. 1, § 9; U.S. Const. Am. VI.

[58] *Freeman v. McKellar*, 795 F. Supp. 733, 742 (E.D. Pa. 1992); *but see Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 577 (Pa. Super. Ct. 1999) ("Here, we have a statute that clearly prohibits discharge-the afore-discussed Whistleblower Law.").

Complaint is that Roger discharged DeRitis not just because he complained about Judge Kenney's concerns with the pace of the criminal docket but also because of Judge Kenney's concerns alone, regardless of DeRitis's communication with Maddren and McGarrigle. Therefore, to the extent that the factual predicate of the wrongful discharge claim is not covered by the Whistleblower Law, it must be allowed to stand against Roger. The claim must be dismissed against Judge Kenney because Judge Kenney did not discharge DeRitis.

### 4. Civil Conspiracy

"In order to state a cause of action for civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy."[59] DeRitis alleges that Judge Kenney, "exercised about the Court of Common Pleas' caseload, and . . . determined to undertake to make that caseload flow more smoothly and more quickly,"[60] contacted, Roger and stated that "'my numbers are too high,' a reference to the aforementioned size of the criminal caseload, and that when he investigated the performance of individual attorneys, particularly district attorneys and public defenders, he had heard that, 'Joe [DeRitis] doesn't move his cases.' . . . *As a result* of this conversation, Defendant Roger *agreed* to remove Plaintiff from Judge Mallon's team, and shortly thereafter Defendant Roger transferred Plaintiff to the juvenile unit."[61]

---

[59] *Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 174 (1997) (internal quotation marks omitted).

[60] Compl. at ¶ 40.

[61] *Id.* at ¶¶ 42–45 (emphasis added).

18

A fair inference from the Complaint is that Judge Kenney contacted Roger, specifically complained about DeRitis, and pressured Roger to take adverse employment actions against DeRitis. This is enough to state a claim for civil conspiracy under Pennsylvania law, and therefore the Court will deny the motion to dismiss on the conspiracy count with respect to Defendants Roger and Kenney.

### C.  Punitive Damages and Section 1988

The Complaint cites § 1988, which is not a source of liability, but a fee-shifting statute. If DeRitis prevails on his § 1983 claim, he may be entitled to some award under § 1988, but now is not the time to determine his entitlement to fees and costs under that statute.[62] Defendant Roger seeks to dismiss the request for punitive damages, but this request too is premature. If discovery shows that DeRitis is unable to prove the malice, willfulness, or recklessness required to support a claim for punitive damages, the Court will entertain another request to dismiss the request.

## IV.    Conclusion

Defendants' motions to dismiss will be granted in part and denied in part as follows: Defendant Roger's motion will be denied with respect to the First Amendment, wrongful discharge, civil conspiracy, and Pennsylvania Whistleblower claims, and his request to dismiss the claim for punitive damages against him will also be denied; Defendant Kenney's motion will be denied with respect to the civil conspiracy claim; the motions will be granted in all other respects. An appropriate Order follows.

---

[62] But see Kay v. Ehrler, 499 U.S. 432, 433 (1991) (pro se lawyer not entitled to attorneys' fees under § 1988).