# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH E. DERITIS,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **13-6212** |
| | : | |
| **DOUGLAS C. ROGER, JR. et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                        **February 23, 2016**

Plaintiff has filed a lawsuit against Douglas C. Roger, Jr., the executive director of the Delaware County Office of the Public Defender, and Chad F. Kenney, President Judge of the Delaware County Court of Common Pleas, alleging various claims under federal and state law stemming from his termination as an assistant public defender. Plaintiff alleges that Defendants conspired to demote and terminate him because Plaintiff encouraged his clients to go to trial rather than plead guilty, and that Defendant Roger terminated him for reporting Defendants' alleged misconduct to the city council chairman and the city solicitor. Now before the Court are the parties' cross-motions for summary judgment.

## I.       FACTUAL AND PROCEDURAL HISTORY

Except as noted, the relevant facts are undisputed.  In 2005, Plaintiff was hired as an assistant public defender in the Delaware County Office of Public Defender. In June 2012, Defendant Roger, the director of the Public Defender's Office, transferred Plaintiff from a trial team to the juvenile unit. The parties dispute whether or not this reassignment was a demotion.

After his reassignment, Plaintiff heard a rumor from his former co-worker James Dolan about the reason for his transfer.  Mr. Dolan heard that Defendant Roger reassigned Plaintiff at

Defendant Kenney's request because Plaintiff "wasn't moving cases."[1] Plaintiff testified at his deposition that he heard this same information from his supervisor, Frank Zarilli.[2]

Plaintiff repeated the rumor to co-workers, private attorneys, and district judges. Plaintiff also met with county solicitor Michael Maddren and with Thomas McGarrigle, then chairman of the city council, and asked them to investigate his reassignment. In an affidavit, Mr. Maddren stated that Plaintiff told him "he was upset because he was not currently assigned to a trial team at the public defender's office and felt this was hurting his career," that "he believed he was not assigned to a trial team because he wanted to take too many cases to trial," and that "this was violating the rights of his clients."[3] At Plaintiff's deposition, he stated that he told both Mr. Maddren and Mr. McGarrigle that he heard a rumor from colleagues that Defendant Roger removed him from trial team at Defendant Kenney's request because Plaintiff was not moving cases, and that he felt he was being mistreated.[4] Both Defendant Kenney and Defendant Roger deny that they ever spoke to one another about Plaintiff or that Defendant Kenney told Defendant Roger that he wanted more of Plaintiff's clients to plead guilty.[5]

On May 2, 2013, Defendant Roger held a meeting with Plaintiff and his supervisor and asked Plaintiff whether he had told a district judge that he had been punished for taking too many cases to trial. After Plaintiff admitted that he made this statement to many district judges and attorneys, as well as to Mr. Maddren and Mr. McGarrigle, Defendant Roger fired Plaintiff.

---

[1] Ex. E to Pl's Reply to Def Roger's Opp. at 8-10; Ex. 7 to Def's Opp. to Pl's Mot. for Summary Judgment at 5.

[2] Ex. 7 to Def's Opp. to Pl's Mot. for Summary Judgment at 6-7. While Defendants agree that Plaintiff discussed this rumor with others, they do not admit that he heard it from James Dolan or Frank Zarilli.

[3] Ex. 4 to Def's Opp. to Pl's Mot. for Summary Judgment at ¶4-5.

[4] Ex. 7 to Def's Opp. to Pl's Mot. for Summary Judgment at 12-13.

[5] Ex. 1 to Def's Opp. to Pl's Mot. for Summary Judgment at ¶38; Ex. B to Def's Reply at 3.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if "the materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[7] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[8] In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[9] Further, a court may not weigh the evidence or make credibility determinations.[10] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[11] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[12] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[13] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact,

---

[6] Fed. R. Civ. P. 56(a), (c)(1).

[7] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Id.*

[9] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[10] *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[12] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[13] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

summary judgment is appropriate.[14]

## III.   DISCUSSION

Plaintiff's Motion for Partial Summary Judgment asserts that he is entitled to judgment as a matter of law on all of his claims against Defendant Roger, including his First Amendment retaliation claim under 42 U.S.C. § 1983, and his Pennsylvania Whistleblower Law, civil conspiracy, and wrongful discharge claims. Defendant Roger's Motion for Summary Judgment asserts that he is entitled to judgment as a matter of law on each of these claims and that he is entitled to qualified immunity. Finally, Defendant Kenney's Motion for Summary Judgment contends that he is entitled to judgment as a matter of law on Plaintiff's claim of civil conspiracy, the only remaining claim against him.

### A.   First Amendment Retaliation

The Supreme Court has held that public employees do not entirely relinquish their First Amendment rights because they are government employees.[15] "[P]ublic employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public."[16] As a result, public employers may not discharge employees because they engage in constitutionally protected speech.[17] At the same time however, public employers have an interest in the efficiency of the

---

[14] *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[15] *Miller v. Clinton Cty.*, 544 F.3d 542, 547 (3d Cir. 2008).

[16] *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 82 (2004) (per curium).

[17] *Miller*, 544 F.3d at 547.

public services they perform, and not every word uttered by a public employee will be protected.[18]

Courts analyze claims of unlawful First Amendment retaliation under a three-step process.[19] First, a public employee must establish that his speech was protected.[20] Second, the employee must show that the protected speech was a substantial or motivating factor in the alleged retaliation.[21] Third, if the plaintiff successfully establishes that he was retaliated against for his protected speech, a defendant can still defeat the plaintiff's claim by showing that he would have taken the same action regardless of the speech.[22] Here, Defendant Roger does not dispute that Plaintiff's speech was a substantial or motivating factor in his termination,[23] but argues only that his speech was not constitutionally protected.[24]

### 1.    Constitutionally Protected Speech

Defendant Roger argues that Plaintiff's termination was lawful because his speech was not about a matter of public concern and was false and thus was not constitutionally protected. A public employee's speech is constitutionally protected under the First Amendment where it is made by the plaintiff while acting as a private citizen, is on a matter of public concern, and the employer did not have an adequate justification for treating the employee differently than the

---

[18] *Roe*, 543 U.S. at 82.

[19] *Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir. 1995).

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] Def's Opp. to Pl's Mot. for Summary Judgment at 16.

[24] Plaintiff argues in support of his Motion for Summary Judgment that the Court has previously ruled that his speech was protected. However, the Court ruled only that the facts as alleged in Plaintiff's Complaint state a claim for relief. Plaintiff still needs to prove the facts alleged. Memorandum Opinion on Def's Mot. to Dismiss, Doc. No. 18 at 8. As a result, the Court will address whether Plaintiff has put forth evidence on this issue.

general public.[25] The truthfulness of an employee's speech is a factor examined as part of the

third step of the analysis.[26] Whether a public employee's speech is constitutionally protected is

"solely a question of law."[27]

### (a)   Private Citizen

A plaintiff is not acting as a private citizen when his speech is made pursuant to his

official duties.[28] Defendant Roger argues that Plaintiff's comments were made pursuant to his

official duties because his speech occurred during conversations with judges and attorneys while

Plaintiff was in court. However, speech that occurs at work may be protected,[29] and Defendant

Roger has not set forth evidence that the speech at issue, Plaintiff's statements to Mr. Maddren

and Mr. McGarrigle, occurred in the workplace, nor has Defendant Roger demonstrated that it

was part of Plaintiff's official duties to raise such concerns with county officials.[30] Because there

is no evidence that Plaintiff's speech fell within the scope of his routine job responsibilities, or

that his position "compelled or called for him to provide or report this information,"[31] the Court

finds that Plaintiff was acting as a private citizen when he made these complaints.

---

[25] *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

[26] *Swineford v. Snyder Cty. Pa.*, 15 F.3d 1258, 1272 (3d Cir. 1994).

[27] *Miller*, 544 F.3d at 548.

[28] *Garcetti*, 547 U.S. at 421 (holding that a memo written by prosecutor, which he wrote "because that is part of what he…was employed to do," was not protected speech because it was written pursuant to his official duties).

[29] *Garcetti*, 547 U.S. at 421 ("Employees in some cases may receive First Amendment protection for expressions made at work.").

[30] Defendant only argues that Plaintiff's complaints to friends, colleagues, magisterial district judges and private attorneys occurred at work, and the Court has already held that Plaintiff failed to state a claim for relief for First Amendment retaliation for these complaints. Memorandum Opinion on Def's Mot. to Dismiss, Doc. No. 18 at 8.

[31] *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 988 (3d Cir. 2014) (internal citations and quotations omitted).

### (b)   Matter of Public Concern

Speech is considered a matter of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community."[32] Speech that discloses misfeasance by public officials, for example, is protected, [33] but, speech about matters of only personal interest is not.[34] However, "the mere fact that an employee's statement is an outgrowth of his personal dispute does not prevent some aspect of it from touching upon matters of public concern."[35]

Defendant Roger argues that Plaintiff's complaints to Mr. Maddren and Mr. McGarrigle were merely personal complaints about his having been transferred from a trial team to the juvenile unit, and thus his statements were not a matter of public concern. The evidence establishes that Plaintiff told Mr. Maddren and Mr. McGarrigle that he believed Defendant Roger reassigned Plaintiff because Defendant Kenney was concerned that Plaintiff took too many cases to trial and that Plaintiff believed this violated his clients' rights.[36] It is certainly an issue of public concern whether a judge and the director of a Public Defender's Office are engaging in "potential wrongdoing or breach of public trust"[37] by colluding to punish attorneys who uphold their clients' rights to a trial. That Plaintiff's comments also included concerns about

---

[32] *Connick v. Myers,* 461 U.S. 138, 146 (1983).

[33] *Swineford*, 15 F.3d at 1271.

[34] *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir. 1983).

[35] *Johnson v. Lincoln Univ. of Com. Sys. of Higher Educ.*, 776 F.2d 443, 451 (3d Cir. 1985) (internal citations and quotations omitted).

[36] Ex. 7 to Def's Opp. to Pl's Mot. for Summary Judgment at 12-13; Ex. 4 to Def's Opp. to Pl's Mot. for Summary Judgment at ¶4-5.

[37] *Czurlanis*, 721 F.2d at 104 (internal quotation marks omitted).

his own mistreatment[38] is to be considered in determining the importance of the speech to the public, and in balancing the employer's interest against the public's interest in hearing the speech.[39]

### (c)      Adequate Justification

The Court must next determine whether Defendant "had an adequate justification for treating [Plaintiff] differently from any other member of the general public."[40] In making this determination, the Court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[41]

On the employee's side, the Court weighs the employee's interest in speaking and the public's interest in hearing.[42] On the employer side, the Court must determine whether the employee's speech is likely to cause a disruption.[43] However, "a mere showing of a disruption is not, by itself, sufficient for a determination that an employee's speech is not protected,"[44] as the employee's interest in speaking may still outweigh the employer's interest.[45] This balancing "is a fact-intensive inquiry that requires consideration of the entire record, and must yield different

---

[38] Ex. 7 to Def's Opp. to Pl's Mot. for Summary Judgment at 13.

[39] *Johnson*, 776 F.2d at 451 ("If, in fact, the employee's speech is largely composed of matters of only personal concern, that becomes relevant when the balancing is done, not in the determination whether the speech touches upon matters of public concern.").

[40] *Morris v. Phila. Hous. Auth.,* 487 Fed.Appx. 37, 39 (3d Cir.2012) (internal citations omitted).

[41] *Rankin v. McPherson*, 483 U.S. 378, 384 (1987).

[42] *Swineford*, 15 F.3d at 1272.

[43]*Watters*, 55 F.3d at 896.

[44] *Id.*

[45] *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1062 (3d Cir. 1989).

results depending on the relative strengths of the issue of public concern and the employer's

interest." "No one factor controls the inquiry."[46]

    To evaluate whether the speech is likely to cause a disruption, courts look to whether the

speech "impairs discipline by superiors or harmony among co-workers, has a detrimental impact

on close working relationships for which personal loyalty and confidence are necessary, or

impedes the performance of the speaker's duties or interferes with the regular operation of the

enterprise,"[47] and whether the employee "knowingly or recklessly made false statements."[48]

Defendant does not argue that Plaintiff's comments harmed or were likely to harm harmony

between co-workers or impeded Plaintiff's ability to perform his job duties. Instead, Defendant

argues that Plaintiff's comments caused a disruption because they were "highly injurious to the

functioning of the office," and because they were false.[49]

    With regard to the truth of his statements, even if Plaintiff's statements were false, there

is no evidence that his speech was knowingly or recklessly false.[50] The evidence establishes only

that Plaintiff communicated his beliefs and opinions about the reason for his transfer to the

juvenile unit.[51] However, while Defendant does not point to any facts to support his contention

---

[46] *Miller*, 544 F.3d at 548.

[47] *Rankin*, 483 U.S. at 388.

[48] *Swineford*, 15 F.3d at 1272.

[49] Def's Opposition to Pl's Mot. for Summary Judgment at 19-20.

[50] Speech does not necessarily need to be true to be protected. In *Pickering*, the Supreme Court held that a teacher's speech was protected, even after finding that some of the speech was false. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 570-73 (1968). Instead, as part of the balancing test, the Court should consider "whether the speech was *knowingly* or *recklessly* false." *Monsanto v. Quinn*, 674 F.2d 990, 994 (3d Cir. 1982) (emphasis added).

[51] For example, Mr. Maddren stated that Plaintiff told him "*he believed* he was not assigned to a trial team because he wanted to take too many cases to trial." Ex. 4 to Def's Opp. to Pl's Mot. for Summary Judgment at ¶5. Similarly, Plaintiff testified at his deposition that he told Mr. Maddren that there was a *rumor* that he was transferred due to Judge Kenney's concerns and that he wanted Mr. Maddren to investigate it. Ex. 7 to Def's Opp. to Pl's Mot. for Summary Judgment at 12-13 (emphasis added).

that the Public Defender's Office was injured, as it is undisputed that Plaintiff told other attorneys and judges about Defendants' alleged misconduct,[52] his comments may have injured the Office's reputation.[53]

Plaintiff's conduct also clearly impaired his relationship with Defendant Roger. Defendant stated in his affidavit that he was "shocked, indignant and angry" when Plaintiff told him that he repeated "this ridiculous fiction to many members of the Delaware County bar and to other [magisterial] district judges in whose courtrooms he was appearing."[54] The Court notes, however, that Defendant has not presented any evidence to establish that their relationship was a "close working relationship for which personal loyalty and confidence are necessary."[55] In *Sprague v. Fitzpatrick,*[56] "the paradigmatic case finding speech disruptive to a close working relationship," the Third Circuit reached its conclusion based on evidence that:

> [T]he First Assistant District Attorney functioned as a virtual alter ego to the District Attorney. He assisted the District Attorney in formulating policy, administered the office on a daily basis, kept the District Attorney informed about the performance of various units, and acted as the District Attorney when the latter was unavailable.[57]

In contrast, here, "[t]here was no evidence submitted by [Defendant Roger] that [Plaintiff's] relationship with [Defendant Roger] was comparable to the 'close working relationship' between the District Attorney and his First Assistant."[58] As a result, the Court must evaluate whether this

---

[52] Statement of Stipulated Material Facts ¶11, 22.

[53] An employer does not need to wait for an actual disruption to occur before terminating an employee, "so long as the speech has significant potential to cause disruption relative to its value." *Miller*, 544 F.3d at n.2.

[54] Ex. 1 to Def's Opp. to Pl's Mot. for Summary Judgment at ¶31-33.

[55] *Rankin*, 483 U.S. at 388.

[56] 546 F.2d 560 (3d Cir. 1976).

[57] *Watters*, 55 F.3d at 898.

[58] *Id.*

type of disruption to Plaintiff's relationship with Defendant and the potential injury to the functioning of Public Defender's office are sufficient to outweigh Plaintiff's and the public's interests.

"[T]he amount of disruption a public employer has to tolerate is directly proportional to the importance of the disputed speech to the public."[59] As Plaintiff's speech involved alleged Government impropriety with potential constitutional implications, it "occupies the highest rung of First Amendment protection."[60] Both Plaintiff and the public have "a significant interest in encouraging legitimate whistleblowing," so that employees can "expos[e] the alleged improprieties" and the public "may receive and evaluate information concerning the alleged abuses of these public officials."[61]

In this case, the significance of the speech is not diminished because Plaintiff's comments arose in a personal context or because Plaintiff also expressed concerns about his own mistreatment and career advancement. In *Miller*, the Third Circuit addressed whether a probation officer's letter, which focused on the officer's personal complaints about her direct supervisors and touched on a matter of public concern, was protected speech.[62] The Court held that the probation officer's speech was unprotected because the matter of public concern, that the probation office was ineffectively run and that her supervisors called probation clients "scum," was collateral to the thrust of her personal complaints.[63] Here, however, the matter of public concern is not collateral to Plaintiff's personal complaints because Plaintiff's personal

---

[59] *Miller*, 544 F.3d at n.2.

[60] *Dougherty*, 772 F.3d at 991 (3d Cir. 2014) (internal citations and quotations omitted).

[61] *O'Donnell*, 875 F.2d at 1062-63.

[62] *Miller*, 544 F.3d at 549-551.

[63] *Miller*, 544 F.3d at 550-51.

employment problem, that he was reassigned due to alleged government misconduct, is itself a matter of public concern.[64]

    This case is thus more analogous to *Rode v. Dellarciprete*.[65] In *Rode,* the Third Circuit held that the plaintiff's comments about racial discrimination were protected speech even though they were "expressed because of her personal employment problems" because she "did not merely claim that she was being mistreated-she claimed that she was a victim of retaliation arising out of racial animus within" her employer.[66] Plaintiff similarly did not merely claim that he was being treated unfairly at work by being reassigned, but that he was the victim of the misfeasance of public officials and that such misfeasance was undermining his clients' rights.

    Because Plaintiff complained about alleged governmental misconduct, Defendant Roger "bear[s] a truly heavy burden," which he has failed to satisfy.[67] The Court holds that the potential disruption to the Public Defender's Office and to Plaintiff's relationship with Defendant is insufficient to outweigh Plaintiff's and the public's significant interests.[68] Therefore, Plaintiff has satisfied the first two steps of the analysis, that his speech was constitutionally protected and that this speech was a substantial or motivating factor in his termination. Summary judgment to

---

[64] The Third Circuit cautioned in *Miller* that "we in no way suggest that speech which is otherwise public in nature can be sanctioned merely because it arises in the context of personal dissatisfaction or a personal grievance. In fact, common sense suggests that most employees will not speak out and criticize their employer if all is going well for them personally and they have no 'axe to grind.' Nor do we suggest that an employer can rely solely upon the disruption that may follow when an employee speaks on a matter of public concern merely because the employee is motivated by personal dissatisfaction with his/her employment. It is not the grinding of the proverbial axe that removes the protection of the First Amendment, it is the private nature of the employee's speech. Care must always be taken not to confuse the two inquiries." *Id.* at n.6.

[65] 845 F.2d 1195 (3d Cir. 1988).

[66] *Id.* at 1201.

[67] *Dougherty*, 772 F.3d at 991 (internal citations and quotations omitted).

[68] "[I]t would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office. Some disruption is almost certainly inevitable; the point is that *Pickering* is truly a balancing test." *Dougherty*, 772 F.3d at 992-93 (internal citations and quotations omitted).

Plaintiff is not warranted, however, as Defendant still has the opportunity at trial to defeat this claim if he can establish that he would have terminated Plaintiff even in the absence of the protected speech.[69]

### 2. Qualified Immunity

Government officials are protected from liability for civil damages as long as their conduct does not violate a clearly established constitutional right.[70] The Supreme Court has mandated a two-step inquiry to evaluate whether a government official is entitled to qualified immunity.[71] Courts must determine whether a defendant has violated a constitutional right and whether this right was clearly established at the time the alleged violation occurred.[72] As discussed, Plaintiff has established that Defendant Roger violated Plaintiff's First Amendment rights by terminating him in retaliation for protected speech. The Court must now determine whether this right was clearly established at the time Defendant's conduct occurred.[73]

A right is clearly established where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[74] However, "the very action in question need not have previously been held unlawful."[75] Instead, the "contours of the right must be

---

[69] *Watters*, 55 F.3d at 892.

[70] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[71] *Id.* at 232.

[72] *Id.*

[73] Contrary to Plaintiff's contentions, the Court has not yet ruled upon whether Defendant is entitled to qualified immunity. In the Court's opinion on Defendants' Motion to Dismiss, the Court held that "[o]n the record before the Court *at this stage of the litigation*, the Court cannot conclude that Roger is entitled to a qualified immunity defense." Memorandum Opinion on Def's Mot. to Dismiss, Doc. No. 18 at 11 (emphasis added).

[74] *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[75] *Dougherty*, 772 F.3d at 993.

sufficiently clear such that the unlawfulness of the action is apparent in light of pre-existing law."[76] Whether the right is clearly established is a question of law.[77]

Defendant Roger argues that he is entitled to qualified immunity for his conduct because he did not violate the law in effect at the time, and as a result, he did not know and should not have known that he allegedly violated Plaintiff's constitutional rights.  However, "[s]ince at least 1967, it has been settled that a State cannot condition public employment on a basis that infringes employee's constitutionally protected interest in freedom of expression."[78] Moreover, at the time that Plaintiff was terminated by Defendant in 2013, it was clearly established that the type of speech at issue here, speech alleging misconduct or wrongdoing by public officials, is entitled to the highest level of constitutional protection.[79] It was also clearly established that even false speech can be constitutionally protected, as long as it is not knowingly or recklessly false.[80] As a result, a reasonable official would be on notice that terminating an employee for this type of speech would be unlawful, and Defendant Roger is not entitled to qualified immunity.

---

[76] *Id.* (internal quotations and citations omitted).

[77] *Id.*

[78] *Id.* (internal quotations and citations omitted).

[79] *O'Donnell*, 875 F.2d at 1061 (3d Cir.1989) ("[A]llegations of corrupt practices by government officials are of the utmost public concern."); *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1271 (3d Cir.1994) ("[S]peech disclosing public officials' misfeasance is protected."); *Baldassare v. State of N.J.*, 250 F.3d 188, 195 (3d Cir. 2001) ("The content of the speech may involve a matter of public concern if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.") (Internal quotations and citations omitted); *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823 (3d Cir.1994) ("[T]he subject matter of [the plaintiff's] reports—improprieties in governmental business—occupies a high level of public concern. Simply because his reports might cause disruption in the eyes of…the very people he was reporting on, could not be a sufficient justification for his discharge.").

[80] *Monsanto v. Quinn*, 674 F.2d at 994.

14

### B.    State Claims

#### 1.    Pennsylvania Whistleblower Law

The Pennsylvania Whistleblower Law prohibits employers from discharging or retaliating against an employee, with respect to his compensation, terms, conditions, location or privileges of employment, when the employee makes a good faith report of wrongdoing to the employer or an appropriate authority.[81] A plaintiff alleging a violation of the statute must establish that "prior to the alleged acts of retaliation, he had made a good faith report of wrongdoing to appropriate authorities" and that there is a "connection between the report of wrongdoing and the alleged retaliatory acts."[82] The statute defines a "good faith report" as a report of wrongdoing or waste "made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true."[83]

Defendant Roger argues that he is entitled to summary judgment on this claim because the facts conclusively establish that Plaintiff did not make a good faith report. First, Defendant argues that Plaintiff had no reasonable cause to believe that the wrongdoing he reported was true because it was based on nothing more than conjecture and he made no effort to verify the information before reporting it to Mr. Maddren and Mr. McGarrigle. Plaintiff contends that he did have reasonable cause to believe the information was true, as he heard it from two attorneys who were acquaintances of both Defendants and co-workers of Defendant Roger.

This argument presents a dispute that cannot be resolved on summary judgment. A reasonable jury could find that hearing the same information from two individuals who worked

---

[81] 43 Pa. Stat. § 1423(a).

[82] *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (2001).

[83] 43 Pa. Stat. § 1422.

with or were friendly with Defendants gave Plaintiff reasonable cause to believe the information was true and that his report was in good faith because it would be difficult for him to investigate and verify its veracity on his own. A reasonable jury could also find it not credible that Plaintiff heard the information from these two separate sources or find his sources to be inadequate.

Defendant also argues that Plaintiff did not make a good faith report because the report was made in consideration of his own personal benefit.  As there is evidence from which a reasonable jury could conclude that Plaintiff's complaints about his reassignment were motivated by personal considerations as well as evidence from which a jury could conclude that he was motivated by concerns about government impropriety and his clients' best interests,[84] the Court will deny both motions for summary judgment on this claim.

### 2.    Civil Conspiracy

Plaintiff claims that Defendants Kenney and Roger committed the tort of civil conspiracy by agreeing to remove Plaintiff from a trial team because he took too many cases to trial, and ultimately terminated him in furtherance of this agreement. Defendants argue that there is no admissible evidence establishing that they had any agreement, let alone an agreement to remove Plaintiff from the trial division and terminate him for an unlawful purpose.

Two or more persons commit the tort of civil conspiracy where they (1) agree or combine (2) to do an unlawful act or a lawful act by unlawful means (3) with malice, "i. e., an intent to injure."[85] A claim for civil conspiracy must also "be predicated upon an underlying tort that would be independently actionable against a single defendant."[86] As it is difficult to prove a

---

[84] Ex. 4 to Def's Opp. to Pl's Mot. for Summary Judgment at ¶4-5.

[85] *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (1979).

[86] *In re Orthopedic Bone Screw Products Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999).

conspiracy by direct evidence, circumstantial evidence can be sufficient to establish the conspiracy. [87] However, "the evidence must be full, clear and satisfactory."[88] "Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence."[89] Additionally, when a plaintiff uses subsequent acts as evidence of the conspiracy, the subsequent acts must clearly indicate the agreement and unlawful purpose, and must not be only "slight circumstances of suspicion."[90]

First, Plaintiff contends that James Dolan's testimony establishes that the Defendants had an unlawful agreement to demote him. Mr. Dolan testified at his deposition that near the time that Plaintiff was transferred from the trial division to the juvenile division, Mr. Dolan heard that Defendant Kenney, Defendant Roger, and Jack Whelan from the District Attorney's office discussed removing Plaintiff from the trial division because he was not moving cases.[91] Plaintiff argues that Mr. Dolan's statement is admissible non-hearsay because it is a statement made by a co-conspirator in furtherance of the conspiracy. This statement is double hearsay, however, and Plaintiff therefore must establish not only that the statements made at the meeting by Defendants are admissible, but that the statement made directly to Mr. Dolan is admissible.[92] As Mr. Dolan testified that he did not remember who made the statement, and Plaintiff has not presented any evidence of the declarant's identity other than his own speculation, the Court cannot determine

---

[87] *RDK Truck Sales & Serv. Inc. v. Mack Trucks, Inc.*, No. 04-4007, 2009 WL 1441578, at *30 (E.D. Pa. May 19, 2009) (internal citations omitted).

[88] *Scully v. US WATS, Inc.*, 238 F.3d 497, 516 (3d Cir. 2001) (quoting *Fife v. Great Atlantic & Pacific Tea Co.*, 52 A.2d 24, 27 (1947)).

[89] *Id.* (quoting *Fife v. Great Atlantic & Pacific Tea Co.*, 356 Pa. 265, 52 A.2d 24, 27 (1947)).

[90] *Novic v. Fenics*, 11 A.2d 871, 874 (1940).

[91] Ex. E to Def's Motion at 4.

[92] Fed. R. Evid. 805.

whether the statement to Mr. Dolan was made by a co-conspirator.[93] Because Plaintiff offers this statement to prove the truth of the matter asserted, that Defendants agreed to transfer Plaintiff for because he was not moving cases, it is inadmissible hearsay.[94]

Second, Plaintiff contends that under Federal Rule of Evidence 801(d)(2), Mr. McGarrigle and Mr. Maddren's failure to investigate Plaintiff's claims is an adoptive admission by an opposing party that the rumors were in fact true, as Mr. McGarrigle and Mr. Maddren were either Defendants' agents, were authorized to make a statement on the subject, or made the statement in a representative capacity.  As Plaintiff has offered no evidence that Mr. McGarrigle and Mr. Maddren were Defendants' agents, representatives, or were authorized to make a statement on Defendants' behalf, their failure to investigate Plaintiff's claims cannot constitute any admission against Defendants.[95]

Third, Plaintiff argues Defendants did not attempt to bring disciplinary charges against him for defamation of a judge under the Pennsylvania Rules of Professional Conduct 3.5 and 8.2,

---

[93] *See Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002 (3d Cir. 1988); *Hughey v. Home Depot USA, Inc.*, No. 08-03213, 2009 WL 2230717, at *2 (E.D. Pa. July 23, 2009).

[94] Fed. R. Evid. 801; Fed. R. Evid. 802; *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."); Fed. R. Civ. P. 56. Plaintiff has not presented evidence from someone with direct knowledge of the alleged conversation who could testify to its occurrence instead of Mr. Dolan. Mr. Whelan, and both Defendant Roger and Defendant Kenney deny that this conversation occurred. Ex. 3 to Def's Opposition to Pl's Motion for Summary Judgment at ¶10; Ex. 1 to Def's Opp. to Pl's Mot. for Summary Judgment at ¶38; Ex. B to Def's Reply at 3.

[95] *See e.g.*, *Fitzpatrick v. The Home Depot, U.S.A., Inc.*, No. 06-3624, 2007 WL 2071894, at *1 (E.D. Pa. July 18, 2007) ("In order for a statement to qualify for admission under Rule 801(d)(2)(D), the party offering the statement must establish (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that the statement relates to a matter within the scope of the agency."); *Austin v. Pennsylvania Dep't of Corr.*, No. 90-7497, 1993 WL 9042, at *5 (E.D. Pa. Jan. 7, 1993) (Applying Pennsylvania common law agency principles under 801(d)(2), which require "manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking") (citing *Scott v. Purcell*, 415 A.2d 56, 60 (1980)); *King v. City of New Kensington*, No. 06-1015, 2008 WL 4492503, at *12 (W.D. Pa. Sept. 30, 2008), *as amended* (Oct. 3, 2008) "(Plaintiff did not offer evidence to establish that Klein's statement is an admission of the defendants, because she did not show that Klein "was authorized to make a statement [on the subject].").

and that this constitutes evidence that the rumors were accurate and the conspiracy existed.[96] The Court will not infer that Defendants conspired from the sole fact that that Plaintiff was not investigated or charged with an ethical violation, as such an inference would, at best, be based only on "mere suspicion."[97]

Fourth, Plaintiff argues that Defendant Kenney admitted to the alleged conspiracy by claiming that he is immune from suit because he acted within the scope of his employment at all times relevant to Plaintiff's claims. Defendant has the right to assert the defense of immunity, which hinges not on whether the alleged wrongful acts were committed, but whether the alleged acts fall within the scope of immunity that has been granted to official judicial acts.

Fifth, Plaintiff argues that Mr. Maddren's affidavit provides evidence that Defendant was fired for taking too many cases to trial. In the affidavit, Mr. Maddren states that Defendant Roger told him that Plaintiff was not performing well and had been told that guilty pleas are often in the best interests of the clients.[98] This statement is not, as Plaintiff contends, an admission that this was the reason for Plaintiff's reassignment or termination. Even if it provided some evidence with regard to Defendant Roger's alleged displeasure with Plaintiff's taking of cases to trial, it is equally susceptible to an innocent inference that Plaintiff's performance was deficient. Moreover, it has no bearing on Defendant Kenney's involvement in Plaintiff's reassignment and termination and whether Defendants had an agreement.

---

[96] Pennsylvania Rule of Professional Conduct 8.2. ("A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge.").

[97] *Novic*, 11 A.2d at 874; *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) ("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment.").

[98] Ex. F to Pl's Reply in support of Mot. for Summary Judgment at ¶11-12.

Finally, Plaintiff argues that the timing of his reassignment—three weeks after Defendant Kenney became President Judge—is circumstantial evidence of the conspiracy. The timing of Plaintiff's reassignment , which is equally consistent with Defendants' innocence, even when combined with Mr. Maddren's statement, is not enough to establish "full, clear and satisfactory"[99] evidence that Defendants had an unlawful agreement to demote and terminate Plaintiff.

Because the evidence that Plaintiff relies upon to establish Defendants' alleged agreement to demote and terminate him would be inadmissible at trial, is based on "mere suspicion," or is "consistent with innocence," Plaintiff has failed to support his claim for civil conspiracy with concrete evidence in the record[100] and Defendants are entitled to summary judgment on this claim.[101] The Court therefore need not reach Defendant Kenney's argument that he is immune from liability.

### 3.      Wrongful Discharge

For an at-will employee, "an action for wrongful discharge exists only when a clear mandate of public policy is violated and where the complaint fails to disclose a plausible and legitimate reason for terminating the at-will relationship."[102]   In its ruling on Defendants' Motion

---

[99] *Scully*, 238 F.3d at 516 (quoting *Fife*, 52 A.2d at 27).

[100] *Celotex Corp.*, 477 U.S. at 322-23.

[101] Plaintiff contends that Defendant Kenney has waived his argument that there is no evidence to establish civil conspiracy, as Defendant's initial filing did not support this claim with evidence. However, in the Court's October 22, 2014 Scheduling Order, the Court directed the parties to follow the Court's Policies and Procedures for Summary Judgment, which allows the party moving for summary judgment to do so without reference to supporting affidavits or other evidence. *See* Scheduling Order, Doc. No. 31 at 1, 3. As a result, that Defendant Kenney did not attach supporting evidence to his Motion does not constitute waiver and instead was consistent with the Court's Scheduling Order.

[102] *Grundon v. Def. Activities Fed. Credit Union, C.P.*, No. 1470-1982, 1983 WL 42683, *1 (Pa. Com. Pl. Sept. 8, 1983).

to Dismiss, the Court held that Plaintiff stated a claim for relief for wrongful discharge based upon Defendant Kenney's concerns about the pace of the criminal docket. [103] However, it dismissed Plaintiff's claim that Defendant Roger wrongfully terminated Plaintiff as a result of his reports to Mr. Maddren and McGarrigle, holding that Plaintiff has an appropriate statutory remedy under the Whistleblower Act for this claim. [104] In Plaintiff's Motion for Summary Judgment, he argues that Defendant Roger wrongfully discharged him because of Defendant Kenney's concern about the pace of the criminal docket and because of Defendant Roger's own concerns about the pace of the criminal docket.

As Plaintiff has not set forth any direct or otherwise admissible evidence that Defendant Kenney was concerned about the pace of the criminal docket, or that Plaintiff's termination was in any way related to Defendant Kenney, no reasonable jury could find that Defendant Roger terminated Plaintiff because of Defendant Kenney's concerns. Plaintiff also fails to present evidence sufficient to establish that he was discharged due to Defendant Roger's concerns about the criminal docket pace. Contrary to Plaintiff's contentions, Defendant Roger's statement that Plaintiff "did not prepare his cases adequately, wasted time on side-issues that had no bearing on the ultimate disposition of the case, and did not interact well with clients or the assistant DA's assigned to that courtroom"[105] does not establish that Defendant Roger terminated Plaintiff because he tended to engage in protracted litigation that consumed more court resources. [106] No

---

[103] Memorandum Opinion on Def's Mot. to Dismiss, Doc. No. 18 at 17-18.

[104] *Id.* at 17.
[105] Exibit C to Pl's Reply at ¶ 10.

[106] Nor do First Assistant Public Defender Frank Zarilli's statements about Plaintiff's work establish anything about Defendant Roger's concerns or the reasons why Defendant Roger fired Plaintiff. Exibit D to Pl's Reply at ¶ 5, 34. Mr. Maddren's statement in his affidavit that Defendant Roger told him that guilty pleas are often in clients' best interests also fails to establish that Defendant Roger fired Plaintiff because he was not moving his cases quickly.

reasonable reading of the statement, even when viewed in the light most favorable to Plaintiff, permits the meaning Plaintiff would attach to it.

### C.    Punitive Damages

A jury may award punitive damages for claims brought under § 1983 where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[107] The remedy "must be reserved…for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief."[108] Whether Defendant's violations of Plaintiff's First Amendment rights justify imposition of punitive damages is better determined after consideration of all of the evidence at trial.[109] However, punitive damages are not available under the Pennsylvania Whistleblower Law,[110] and Plaintiff's claim for punitive damages under this statute is dismissed.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Defendant Kenney's Motion for Summary Judgment and dismiss Plaintiff's civil conspiracy claim against him. The Court will also grant Defendant Roger's Motion for Summary Judgment in part, and dismiss Plaintiff's civil conspiracy and wrongful discharge claims against him, as well as Plaintiff's claim for punitive damages under the Pennsylvania Whistleblower Law. The Court will deny Defendant Roger's Motion with respect to Plaintiff's First Amendment retaliation claim, Plaintiff's

---

[107] *Smith v. Wade,* 461 U.S. 30, 56 (1983).

[108] *Keenan v. City of Philadelphia,* 983 F.2d 459, 469–70 (3d Cir.1992) (internal quotations and citations omitted).

[109] *See e.g.*, *Malone v. Econ. Borough Mun. Auth.*, 669 F. Supp. 2d 582, 612 (W.D. Pa. 2009).

[110] *O'Rourke*, 778 A.2d at 1202-03.

Pennsylvania Whistleblower claim, Plaintiff's claim for punitive damages under § 1983, and Defendant Roger's affirmative defense of qualified immunity. Finally, the Court will deny Plaintiff's Partial Motion for Summary Judgment. Therefore, the issues to be resolved at trial will be whether Defendant retaliated against Plaintiff in violation of Pennsylvania Whistleblower Law and, for Plaintiff's First Amendment claim, whether Defendant would have discharged Plaintiff in the absence of his protected speech and whether Plaintiff is entitled to punitive damages. An appropriate Order will follow.